

# NUMBER 13-08-00522-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**DAVID ALAN RODRIGUEZ,**                     **Appellant,**

**v.**

**THE STATE OF TEXAS,**                     **Appellee.**

---

### On appeal from the 24th District Court
### of Jackson County, Texas.

---

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Vela
### Memorandum Opinion by Chief Justice Valdez

Appellant, David Alan Rodriguez, appeals his jury conviction of burglary of a habitation. *See* TEX. PENAL CODE ANN.§ 30.02 (Vernon 2003). The jury assessed Rodriguez's punishment, enhanced by a prior felony conviction, at seventy-five years' imprisonment, and it also assessed a $75,000 fine. In five issues, which we consider out of order, Rodriguez contends that his conviction should be vacated or reversed. Because we find that trial court error affected Rodriguez's substantial rights, we reverse and remand

for a new trial.

## I. BACKGROUND

On July 28, 2006, Rodriguez was charged by indictment with burglary of a habitation with the intent to commit the felony of aggravated assault. The charge stemmed from an altercation that Rodriguez had with John Torres, a friend, while the two were at Torres's house in Ganado, Texas. Rodriguez was arraigned and pled not guilty to the indictment. A jury trial commenced on June 10, 2008.

### A. Rodriguez's Participation at Trial

After the State's opening statement, defense counsel waived opening statement. Rodriguez stood and asked the court to allow him to make an opening statement on his own behalf. The court directed Rodriguez to sit down, and warned him that if he did not, it would remove him from the courtroom. Rodriguez refused to comply, instead opting to express his belief to the jury that he was being denied adequate representation, freedom of speech, and various other constitutional rights. The court removed Rodriguez from the courtroom. Throughout the remainder of the trial, the court periodically brought Rodriguez into the courtroom, outside the jury's presence, and asked if he wished to return to his trial. Rodriguez continually refused, and expressed his desire not to be present at the proceeding. The evidence and testimony adduced at trial is as follows.

### B. John Torres's Testimony

On the night of Friday, June 16, 2006, Rodriguez visited the home of John Torres. Torres testified that after having a couple of beers, he and Rodriguez picked up Torres's girlfriend, M.E., and visited a bar. Torres and Rodriguez left the bar around 2:30 a.m. on Saturday, June 17, 2006, and drove back to Torres's home to watch television. Once at the house, Rodriguez became angry when Torres asked him to turn off a light. Torres

2

asked Rodriguez to leave, and Rodriguez became angry, threw a cap at Torres, and said, "f*** you, b****." Rodriguez walked out of the house and then came back in, called Torres a b**** a second time, and punched Torres in the ear. Rodriguez again walked out of the house. Torres locked the door and attempted to call 911 when Rodriguez came back into the house. Rodriguez approached Torres and held a knife three to four inches from his chest. Torres asked Rodriguez not to stab him and stepped backwards into a bedroom. Rodriguez closed the bedroom door, with Torres inside, and left the house. Torres phoned 911 and told the operator that Rodriguez had punched him in the ear, pulled a knife on him, and stolen several DVDs. On cross-examination, Rodriguez's counsel asked Torres, if he and Rodriguez had previously fought. After describing a prior argument between him and Rodriguez, Torres stated, "I was his friend or whatever, but until this, I don't understand why he did this, you know. Besides what he did to me, the next day he raped my girlfriend [M.E.]." The State immediately asked Torres to "just answer [defense counsel's] question."

The jury also heard testimony from officers who investigated the incident, as well as a 911 dispatcher, as to the events that unfolded on the night in question.

## C.    Rodriguez's Grand Jury Testimony

The State then called the foreman of the grand jury that indicted Rodriguez. The State played a video-taped recording of Rodriguez's grand jury testimony in its entirety. In the videotape, Rodriguez testified that he was living in Houston around the time of the alleged burglary, but that he had traveled to Ganado one weekend and visited Torres; however, he could not remember the specific date of his visit. Rodriguez said that he took some of Torres's DVDs because Torres owed him money, and that he sold the DVDs to people in Houston. Additionally, Rodriguez testified that he traveled to Ganado on June

3

16, 2006 to report to his probation officer, but he returned to Houston later that evening because he had to work the next day.[1] After the grand jury video was played, the State called the manager of a pawn shop in Victoria who testified that on Saturday, June 17, 2006, at 3:26 p.m., he received DVDs from Rodriguez.

## D. P.E.'s and M.E.'s Testimony

Next, the State called P.E., the mother of Torres's girlfriend, M.E.. P.E.'s testimony only concerned M.E.'s emotional and mental capacity. P.E. testified that although M.E. was twenty-four years old, she did not have the emotional and mental maturity level of a woman her age. P.E. stated that complications at birth caused M.E. to experience developmental problems. She also testified that M.E. was under the care of Gulf Bend Mental Health and Mental Retardation.

M.E. testified that Torres introduced her to Rodriguez on Friday, June 16, 2006. She stated that at approximately 1:00 a.m. on Sunday, June 18, 2006, Rodriguez came to her house and knocked on the door. M.E.'s testimony continued as follows:

[State]: Did Mr. Rodriguez then know that you and Mr. Torres were boyfriend/girlfriend?

[M.E.]: Yes.

Q: When you left at one a.m. to go with Mr. Rodriguez, where did you think you were going?

A: I was going to see John [Torres].

Q: And did you end up at a road or somewhere and have sex with Mr. Rodriguez? Just yes or no, please, ma'am.

A: Yes.

---

[1] Rodriguez's probation officer later testified that Rodriguez had reported to the probation office on June 16, 2006, and requested permission to travel to Houston for employment purposes.

The State then rested, and the defense rested without calling any witnesses. The jury subsequently found Rodriguez guilty of the offense of burglary of a habitation with the intent to commit the felony of aggravated assault. *See id.* This appeal ensued.

## II. LEGAL SUFFICIENCY

In his third issue, Rodriguez contends that the evidence is legally insufficient to support his conviction. Specifically, Rodriguez contends that the evidence was insufficient because the State failed to offer evidence "that the person standing trial was the defendant."

### A.    Standard of Review and Applicable Law

In conducting a legal sufficiency review, a reviewing court must ask whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'—not whether '*it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (emphasis in original)). We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). Instead, we consider whether the jury reached a rational decision. *Beckham*, 29 S.W.3d at 151. We must resolve any inconsistencies in the evidence in favor of the judgment. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

"In a criminal trial the State must prove the accused was the perpetrator, and the accused stands innocent before the court until his identity as the perpetrator is established

beyond a reasonable doubt." *Rice v. State*, 801 S.W.2d 16, 17 (Tex.App.–Fort Worth 1990, writ ref'd).

## B.    Analysis

Rodriguez argues that after he was removed from the courtroom, "no effort was made to have the witnesses identify [him]." However, Torres, the complaining witness identified a picture of Rodriguez as the man who came into his house, held a knife to his chest, and stole his DVDs. Additionally, an investigating officer testified that: (1) during the investigation, Torres accused Rodriguez of coming into his house and taking his DVDs; and (2) based on the information provided by Torres, the officer obtained an arrest warrant for Rodriguez.

Viewing this evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that the David Alan Rodriguez standing trial was the same David Alan Rodriguez named in the indictment. Therefore, the evidence was legally sufficient to support the identification of Rodriguez. Rodriguez's third issue is overruled.

### III. EXTRANEOUS OFFENSE EVIDENCE

In his second issue, Rodriguez asserts that the trial court erred in admitting P.E.'s and M.E.'s testimony into evidence during the guilt-innocence stage of trial. Specifically, Rodriguez asserts that the testimony was evidence of an extraneous offense and therefore not relevant.

## A.    Did the Trial Court Err?

*1. Standard of Review*

An appellate court reviews a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). "We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's judgment if it lies within the zone of reasonable disagreement." *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009). A trial court abuses its discretion when its decision is so clearly wrong that it falls outside that zone within which reasonable persons might disagree. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

*2. Applicable Law*

"Evidence must satisfy two requirements to be considered relevant: first, materiality, and second, probativeness." *Miller v. State*, 36 S.W.3d 503, 507 (Tex Crim. App 2001). In order for evidence to be material, it "must be shown to be addressed to the proof of a material proposition, i.e., any fact that is of consequence to the determination of the action." *Id.* Evidence offered to prove a proposition which is not a matter in issue is immaterial. *Id.* In order to prove that the proffered evidence is probative, the proponent must show that "the proffered evidence . . . tend[s] to make the existence of the fact more or less probable than it would be without the evidence." *Id.* If the proponent establishes that the evidence is both material and probative, then the evidence is admissible unless it is otherwise barred by the Constitution, statutes, or other rules of evidence. *See* TEX. R. EVID. 402.

Texas Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or bad acts is not admissible against a defendant to prove his character in order to show that he acted in conformity with that character. *See* TEX. R. EVID. 404(b). However, evidence

7

of extraneous crimes, wrongs or acts is admissible under Rule 404(b) if it tends in logic and common experience to serve some purpose other than character conformity to make the existence of a fact of consequence more or less probable than it would be without the evidence. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (op. on reh'g). Rule 404(b) also provides that extraneous-acts evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Tex. R. Evid. 404(b). This list is illustrative rather than exhaustive. *Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004). Extraneous acts evidence may also be admissible to rebut a defensive theory. *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).

*3. Analysis*

When determining whether evidence is relevant, we "examine the purpose for which the evidence is being introduced." *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). During the State's case-in-chief, the court admitted a video of Rodriguez's grand jury testimony in its entirety.[2] Before resting, the State approached the bench and implored it to allow the testimony of P.E. and M.E. to be offered. The State stipulated that P.E. would testify about M.E.'s "mental problems and emotional and maturity problems." Further, the State anticipated that M.E. would testify that "[a]t one o' clock that Sunday he [Rodriguez] knocked on her door, she thought she was going with him to go to John Torres'. And then all she's going to say is they ended up at an unknown location[,] and he had sex with her. I'm not going to offer consent or anything." The State argued that the testimony was "not to show an extraneous offense," but was "in rebuttal to his [Rodriguez's]

---

[2] Rodriguez does not contend that the trial court erred in admitting the video of his grand jury testimony; therefore, we do not address whether the video was properly admitted.

8

grand jury tape that says, quote[,] 'I don't recall the date, what day it was that I went to his [Torres's] house.'"[3]

While extraneous offenses may be offered to rebut defensive theories, Rodriguez did not offer a defensive theory at trial. *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003); *Shedden v. State*, 268 S.W.3d 717, 739 (Tex. App.–Corpus 2008, pet. ref'd). Rodriguez did not: (1) offer an opening statement; (2) call or question witnesses to establish the defense of alibi; or (3) raise an alibi defense during closing argument. The alibi defense that the State sought to rebut was allegedly raised by Rodriguez when he testified before the grand jury.

At a bench hearing prior to P.E.'s and M.E.'s testimony, the State argued that Rodriguez lied to the grand jury about not remembering the date that he had last been at Torres's home. The State contended that "hav[ing] sex with virtually a total stranger who just happens to be the victim's girlfriend," would establish that Rodriguez had lied to the grand jury. The State argued, "I'm trying to show that . . . the incident shows . . . that the alibi isn't true, and he [Rodriguez] went over to the victim's girlfriend and had sex."

However, Rodriguez hotly contested that he asserted an alibi defense. At the bench hearing prior to P.E.'s and M.E.'s testimony, Rodriguez's counsel argued:

> Judge, during the testimony in the grand jury, there's a portion where the defendant states, well, if it was the 16th then that was the date, the 16th. He admits in a round about way that if it was on the 16th, the day of the incident, that that was the actual date. He doesn't continue with the alibi of saying well, that particular date I was in Houston and I wasn't in Ganado. After the State continues to question him he gets to a point where he says well, if it

---

[3] On appeal, the State argues that "[a]ppellant's characterization that certain evidence of extraneous offenses was introduced to 'rebut grand jury testimony' is simply a mischaracterization," and that the evidence was offered "to show appellant's 'consciousness of guilt' by giving false and misleading testimony to the grand jury." Upon review of the record, we do not find Rodriguez's assertion to be a mischaracterization because at trial, the State never mentioned 'consciousness of guilt' as a ground for the admission of M.E.'s or P.E's testimony.

was on that date, then it did happen on that date.

Upon review of Rodriguez's grand jury testimony, we find that Rodriguez did not assert a defense of alibi. During his grand jury testimony, Rodriguez testified that on Friday, June 16 he met with his probation officer, and then went to visit his parents before leaving Ganado around 6:00 or 7:00 p.m. to return to Houston. Rodriguez further testified that one Friday night he went to a bar with Torres, and then went to Torres's home to watch television. However, Rodriguez could not recall whether he went out with Torres on Friday, June 16, the Friday before, or the Friday after. Rodriguez stated, "if it was June 16, then it was June 16, but I don't know."

In light of the foregoing, we find that the State was being disingenuous to the trial court by offering: (1) Rodriguez's grand jury testimony; (2) P.E.'s testimony on M.E.'s mental incapacity; and (3) M.E.'s testimony regarding sex with Rodriguez, to disprove an "alibi theory." It is clear that the State used the "alibi theory" as a guise to bring in clearly irrelevant evidence of extraneous acts. Even the trial court, at points, recognized this tactic.

Despite the State's argument that P.E. and M.E. would not testify to offenses extraneous to those for which Rodriguez was currently being tried, the court insisted that some type of limiting instruction should be given. Prior to P.E.'s and M.E.'s testimony, the court told the jury that the testimony could only be used "to determine whether or not the alibi that Mr. Rodriguez offered to the grand jury about his whereabouts on the weekend of the 16th, 17th and 18th is believable or unbelievable."

Because no defense of alibi was actually asserted, the court's limiting instruction failed to limit the jury's consideration of P.E.'s and M.E.'s testimony to only relevant

evidence. Therefore, the evidence that M.E. was suffering from mental retardation and that Rodriguez engaged in sex with her shortly after the alleged aggravated burglary has no relevance beyond demonstrating poor character. Because this is exactly what Rule 404(b) prohibits, we find that the trial court's decision to admit the testimony of P.E. and M.E. was an abuse of discretion. *See Lopez v. State*, ___ S.W.3d ___, No. 13-06-626-CR, 2009 Tex. App. LEXIS 2050, at *71 (Tex. App.–Corpus Christi March 26, 2009, no pet. h.) (finding that the trial court abused its discretion where there "was no admissible purpose for the admission of the extraneous acts"). The admission of P.E.'s and M.E.'s testimony constitutes error.

## B.     Did the Error Affect Rodriguez's Substantial Rights?

*1. Standard of Review and Applicable Law*

The admission of extraneous acts constitutes non-constitutional error; therefore, we will disregard the error if it does not affect Rodriguez's substantial rights. *See* TEX. R. APP. P. 44.2(b). Substantial rights are not affected by the erroneous admission of evidence if we, after examining the record as a whole, have fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). Additionally, it is important to note that in conducting our analysis "'we are not concerned . . . with whether there was sufficient evidence on which [Rodriguez] could have been convicted without the evidence complained of. The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" *Lopez*, 2009 Tex. App. LEXIS 2050, at *71 (quoting *Fahy v. Connecticut*, 375 U.S. 85, 88 (1963)). When a trial court errs by improperly admitting evidence, we determine the likelihood that the error adversely affected the jury's decision

11

by considering everything in the record, including: (1) testimony or physical evidence admitted for the jury's consideration; (2) the nature of the evidence supporting the verdict; (3) the character of the alleged error and how it might be considered in connection with other evidence in the case; (4) the jury instructions; (5) the State's theory and any defensive theories; (6) closing arguments; (7) voir dire; and (8) whether the State emphasized the error. *Haley v. State*, 173 S.W.3d 510, 518-19 (Tex. Crim. App. 2005). If we are "unsure whether the error affected the outcome, [we] should treat the error as harmful, that is, as having a substantial and injurious effect or influence in determining the jury's verdict." *Lopez*, 2009 Tex. App. LEXIS 2050, at *72.

*2. Analysis*

In order to prove that Rodriguez committed the offense of burglary of a habitation with the intent to commit aggravated assault, the State offered the first hand account of Torres. Testimony given by the officers who investigated the incident served to substantiate Torres's testimony. While the evidence establishing Rodriguez's guilt was substantial, it was not overwhelming. *See id.* at **72-73 (finding that evidence was not overwhelming where there was no physical evidence and the only witnesses were the alleged victim and the accused). Moreover, our determination of harm does not hinge on "whether there was sufficient evidence on which [Rodriguez] could have been convicted without the evidence complained of." *Id.* at *71. Therefore, we continue our analysis to determine "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" *Id.* at *71.

In the instant case, the testimony that the jury heard from P.E. and M.E. did not establish an element of the charged crime or rebut any defensive theory asserted at trial.

12

It did not serve to impeach Rodriguez, as Rodriguez chose not to testify. P.E. testified solely as to M.E.'s mental condition. Arguably, such testimony painted M.E. as a sympathetic witness. Immediately after the jury heard P.E.'s testimony that M.E. had the emotional and mental capacity of a child, M.E. testified that Rodriguez showed up at her house, unannounced, under the guise that he would drive her to the home of her boyfriend. M.E. then testified that Rodriguez did not take her to see her boyfriend, and instead had sex with her.

Although the State did not inquire into whether the sex was consensual, the jury likely questioned whether the sex was consensual based on M.E.'s emotional and mental disabilities, as well as the facts leading up to the sexual encounter. Moreover, earlier in the trial, Torres testified that Rodriguez had "raped his girlfriend." Torres also testified that M.E. had "the mind of a kid kind of," and, although she was in her twenties, behaved like an eleven-year-old.

While the testimony heard was prejudicial, its prejudicial effect was somewhat mitigated because prior to the testimony, the court gave the jury an instruction limiting the purpose for which P.E.'s and M.E.'s testimony could be considered. The instruction provided that the jury should only consider P.E.'s and M.E.'s testimony to determine whether the "alibi" that Rodriguez gave to the grand jury was "believable or unbelievable."

However, the State's actions emphasized the error of admitting P.E.'s and M.E.'s testimony. During its opening statement, the State argued, "I'm going to . . . show you that he can remember those dates. . . . [H]ow about nine and a half hours [after the alleged burglary] . . . David Rodriguez[] showed up at [M.E.]'s house . . .he knocked on the door, only having met her once, and [took] her out in the country and ha[d] sex with her. . . . The

13

evidence will show that should be a very memorable weekend . . . . she will testify, her mother will testify, simply to let you know, give you a better picture of what [M.E.]'s condition is mentally, physically, emotionally."

In closing, the State again referred to the sexual encounter between Rodriguez and M.E. During closing, the State read the following testimony from Rodriguez's grand jury testimony to the jury: "I mean, I could hurt the guy, I didn't hit him, I could hurt the guy. You know, I'm a big dude, he's small and I'm not going to hurt him because the guy's been my friend for many, many, many, many, years." The State then followed with its own interpretation of Rodriguez's testimony by stating, "I'm not going to hurt him because he's been my friend many, many, many, years. But one-and-a-half days later I'm going to go have sex with his girlfriend, who I've only met once, who's mentally challenged."

The State's actions created the possibility that a juror would lose sight of the specific issues of aggravated burglary of a habitation, and would instead convict and punish Rodriguez for the extraneous act of having sex with the alleged victim's mentally challenged girlfriend. *See id.* at \*66 (noting that where evidence of the defendant's past sexual acts was admitted into evidence, a juror could lose sight of the particular sexual assault for which the defendant was on trial). After reviewing the record as a whole, we do not have a fair assurance that the evidence in question did not influence the jury or had but slight effect. *See id.* at \*73 (finding the trial court's error harmful where evidence of guilt was not overwhelming and was "coupled with the extraneous acts' great potential to disrupt the juror's orderly evaluation of the evidence"). Accordingly, we conclude any error in admitting evidence of Rodriguez's sexual encounter with M.E. was harmful. *See id.* at \*72. We therefore sustain Rodriguez's second issue.

14

## IV. Conclusion

Because we have sustained Rodriguez's second issue, we reverse the trial court's judgment and remand the case for a new trial.[4]

_____
ROGELIO VALDEZ
Chief Justice

Dissenting Memorandum Opinion
by Justice Vela.

Do Not Publish. Tex. R. App. P. 47.2(b)
Memorandum Opinion delivered and
filed this the 13th day of August, 2009.

---

[4] In light of our disposition, we need not discuss Rodriguez's remaining issues. These issues, which concern the denial of Rodriguez's right to confront witnesses, charge error, and ineffective assistance of counsel would not afford Rodriguez any greater relief than already afforded herein. *See* Tex. R. App. P. 47.1.